CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JAN 20 2005

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JAMES E. WATSON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. 6:03cv105 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner Of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff James E. Watson, Jr. ("Watson") brings this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned magistrate judge on March 23, 2004 for report and recommendation. After briefing and oral argument on the appeal, and based on a thorough review of the administrative record and relevant case law, it is recommended that the Commissioner's motion for summary judgment be granted as the decision of the Commissioner was founded on correct legal principles and supported by substantial evidence.

### FACTUAL AND ADMINISTRATIVE BACKGROUND

Watson was born on June 18, 1943 and has a GED. He was in the Air Force for seven years. He worked for the Roanoke City Waste Water Disposal Department from 1977 until 2000. (R. 76, 81)

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on April 18, 2001 alleging disability as of December 1, 2000, based on arthritis, bipolar disorder, explosive disorder, sleep apnea, and gastro intestinal reflux disorder pain. (Record, "R." at 75) The application was denied initially (R. 31), and on reconsideration by the Social Security Administration (R. 14). Plaintiff requested a hearing which was conducted on July 9, 2002, at which time he testified before an Administrative Law Judge ("ALJ"). (R. 318) Plaintiff was represented by counsel at the July 9, 2002 appeal hearing. On August 29, 2002, the ALJ found that Plaintiff was not entitled to a period of disability, Disability Insurance Benefits, under §§ 216(i); 223, of the Social Security Act. (R. 17) The ALJ's findings became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on November 13, 2003. (R. 5)

In making the determination that Plaintiff is not entitled to benefits, the ALJ found that Watson's bipolar disorder was a severe impairment, but that this impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

In considering the Watson's bipolar disorder under the appropriate section of Appendix 1, the ALJ found that the medical evidence shows that Watson has a disorder of the type specified in Section 12.04. However, only when his anger is exacerbated does Watson experience anhedonia, sleep disturbance, decreased energy, and difficulty concentrating or thinking, sufficient to satisfy the A criteria of Section 12.04. In rating the severity of Watson's bipolar disorder under the B criteria, the ALJ found that Watson has only mild restriction in his activities of daily living, marked difficulty in maintaining social functioning, and moderate difficulty in maintaining concentration, persistence, or pace. Although Watson reported elevated anger and

2

thoughts of striking his supervisor, Watson was able to contain his anger and not engage in violent behavior. The ALJ noted that there are no recorded instances that Watson decompensated in either the workplace or out of the workplace. With respect to the C criteria of Section 12.04, the ALJ found that Watson's medically documented bipolar disorder of at least two years duration has caused more than a minimal limitation in his ability to perform basic work activity. However, the ALJ concluded evidence does not establish the presence of any of the other C criteria.

The ALJ evaluated the medical evidence from the Veterans Administration (VA) psychiatrists, who provided consistent medication, therapy, and anger counseling to Watson for over five years. Various diagnoses have included a dysthymic disorder, depression, a bipolar disorder, and anxiety. The ALJ noted that work stress, family stress, and associating with others have been determined to be irritants for Watson's mental condition, but that the anger group and medication from the VA have provided a good deal of help in controlling his anger and inability to deal with people. In addition, the ALJ noted that some of Watson's difficulties were attributed to discontinuance of thyroid medication, not due to Watson's bipolar disorder. In early 2000, Watson considered the subject of early retirement from his job to decrease his work-stress level, and began exploring other work options. In a progress note dated October 11, 2000, Watson reported increased difficulty controlling his temper toward his work supervisor. Watson was able to use accumulated sick leave, and remain distanced from his supervisor until his retirement became effective on December 1, 2000.

The ALJ relied on the assessment of Dr. Lehmann, a psychiatrist at the VA Medical Center, who evaluated Watson in July, 2002. Dr. Lehmann found Watson to be alert and

3

oriented, with unimpaired memory and judgment, unimpaired concentration and abstract thinking, and appropriate behavior. Dr. Lehman found Watson to demonstrate normal affect, and have no impairment of either thought processes or communication. Dr. Lehmann provided an assessment of Watson's ability to perform work-related mental activities, wherein she found him with no or slight impairment in ability to carry out short, simple instructions throughout an 8-hour workday. Dr. Lehmann also assessed Watson with no or slight impairment in his ability to adhere to an 8-hour workday schedule without special supervision, to sustain an ordinary 8-hour workday, to make simple work-related decisions consistently throughout an 8-hour workday, and to maintain regular full-time attendance without absence of more than one day per month. In addition, Dr. Lehmann found Watson with no or slight impairment in his ability to remember location or work procedure, and in his ability to travel to unfamiliar places or to use public transportation. The ALJ determined that Dr. Lehmann's assessment suggests that Watson is able to associate with the public on a limited basis. The only marked or extreme impairment Dr. Lehmann found was an inability to work closely with others, inability to adapt to significant change in work procedures, and inability for extended concentration on, and increased pace of the work.

The ALJ found that Watson's other claimed impairments were not severe and did not impose more than minimal limitation on Watson's functional capacity. As regards arthritis, the ALJ found that Watson's arthritis was not formally diagnosed, and no medical source placed any restrictions on any part of Watson's body, including his hands, due to arthritis. Watson testified that he is able to maintain full use of his hands to perform all manner of household work including repair of his residence, woodworking, and computer keyboarding. Watson's list of

4

medications is devoid of any pain medication, including mention of over-the-counter pain medication for arthritic pain. Thus, the ALJ concluded that Watson has not demonstrated support for his allegation of debilitating arthritis.

As regards gastrointestinal reflux, the ALJ found that while Watson is prescribed some medicine for a stomach disorder, the record does not contain any information that Watson has required alteration of his diet, is unable to eat certain foods, has experienced significant weight changes, or experiences any other symptom that supports a finding that Watson's gastrointestinal reflux causes more than a minimal inconvenience in the claimant's daily activities.

Concerning sleep apnea, the ALJ found that Watson was prescribed a C-PAP machine on September 11, 2000, which improved his ability to sleep, and resulted in increased daytime energy. Watson reported that although he may awaken several times each night, with the C-PAP machine he is generally able to quickly return to sleep. Watson and his wife reported that the claimant is irritable and fatigued on days when he has not used his C-PAP machine throughout the previous night.

The ALJ found that Watson is an individual of advanced age with a high school equivalent education. Although the ALJ found he had no exertional limitation, he is unable to perform his past relevant work in a wastewater treatment plant. The ALJ found that Watson has no transferable skills to other work in the national economy, but retains the residual functional capacity for the performance of unskilled work at all exertional levels, that is performed alone, and that does not require contact with the public or co-workers, and that involves little supervision. Considering the types of work that the claimant is still functionally capable of performing in combination with his age, education and work experience, the ALJ found that

5

Watson could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy. Examples of such jobs include work as a janitor, and as a security guard.

Based on this review of the record, the ALJ concluded that Watson was not disabled. The only issue before the Court is whether this decision is supported by substantial evidence.

## APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> [T]he inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520. See also Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. See 20 C.F.R. § 404.1520(a) (2003).

6

A claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once he establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. See 42 U.S.C.A. § 423(d)(2); McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall, 658 F.2d at 264-65; Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Mastro v. Apfel, 270 F.3d 171 (4th Cir. 2001).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

7

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Secretary's findings and that her conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Secretary, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## ANALYSIS

Watson contends that he is disabled because his residual functional capacity allows him to perform only unskilled jobs, and all unskilled jobs require some supervision. Watson submits that his anger disorder prevents him from working at any job which requires supervision. Watson contends that the ALJ's decision was not supported by substantial evidence primarily because of the assessment of one of his treating psychiatrists, Dr. Lehmann, particularly when considered in conjunction with the testimony of the vocational expert, the circumstances leading up to Watson's early retirement and the provisions of Social Security Ruling 85-15. Taken in combination, Watson contends that these factors compel the conclusion that he is disabled.

Watson argues that the testimony of the vocational expert requires that to be able to perform unskilled work such as a night janitor position, Watson has to be able to get along with his supervisor, perform an 8 hour shift and be subject to work stresses. This, Watson contends, he cannot do.

Watson also contends that SSR 85-15 provides that those with mental disorders may be able to function in a highly restricted lifestyle, but may not be able to adapt to the demands or

8

stress of the workplace. Thus, although Watson concedes that he has been able to moderate his symptoms following his retirement, SSR 85-15 requires the Commissioner to take into account the difference between his more restricted environment post-retirement and normal work stresses. SSR 85-15 also requires Watson to be able to get along with supervisors and coworkers which he contends he cannot do.

Watson also points to the letter of November 9, 2000 from a treating clinical psychologist at the VA, M.K. Johnson, Ph. D., which discusses Watson's anger towards one supervisor whom he perceived to be harassing him, and urges his employer to allow Watson to take early retirement and that "he be allowed to stop working at the plant now." (R. 251) The letter notes that "[i]n the past several weeks, I have seen an increase in frustration over his inability to form a positive work relationship with this supervisor which has resulted in an increase in angry feelings toward this man." (R. 251) While Watson did not directly threatened his supervisor, Dr. Johnson noted that Watson was becoming increasingly worried that during his last few weeks of employment that he may become involved in a conflict situation and "will be unable to control his anger and will become physically aggressive towards this man." (R. 251)

In large measure, Watson's argument turns on the ALJ's evaluation of the evidence of Watson's treating VA mental health specialists, and particularly the Mental Limitations Assessment completed by Dr. Lehmann on June 13, 2002. (R. 249-50) Watson contends that the ALJ did not accurately describe Dr. Lehmann's assessment, and that under a proper characterization of that assessment, a finding of disability is clearly required.

Contrary to Watson's contention, the ALJ's decision contains detailed analysis of Watson's treatment records at the VA, including Dr. Lehmann's assessment. (R. 20-21)

9

The decision also catalogs Watson's testimony at the hearing and his pre-hearing daily activities questionnaire detailing a wide variety of activities in which Watson engages. The ALJ summarized the record as follows:

> The clinical and objective findings are inconsistent with an individual experiencing totally debilitating mental symptomatology. The claimant has stated that he quit his job due to increased anger with a supervisor. The claimant stated that he feared he would physically harm the supervisor due to his anger. However, the claimant proved that he was able to control his temper without physical violence. The claimant stated that he is irritated by a neighbor, by other drivers on the highways and by people in shopping centers. Yet, the claimant has admitted that he is able to move away from his neighbor, is able to drive without significant difficulty, and is able to shop at Wal Mart and Home Depot without anger related incidents. The claimant is considering a job transporting cars between dealerships, a job that requires driving on roads with other drivers. Such a consideration is inconsistent with his statement of irritability on the road. If not able to tolerate other drivers without increased anger and frustration, it is confusing as to why the claimant would consider a job that places him solidly in a position where his anger would be increased. The claimant has specified that if a job were available to him wherein he could avoid working with co-workers and supervisors, he would consider taking the job.

(R. 22)

This conclusion by the ALJ is consistent with the totality of the evidence in the record, including, in particular, the most recent Progress Notes from Watson's treating psychologists and psychiatrists at the VA. On March 4, 2002, Dr. Lehmann's Progress Note indicates that "[p]atient reports much improved irritability, such that he has better control of his temper and his wife has also noticed the difference in his ability to handle irritating events." (R. 279) On May 20, 2002, Dr. Mary K. Johnson, Clinical Psychologist, states that "Vet reports improved mood - no depression or irritability. . . . Vet also discussed issue of working. We agreed that a trial of

10

working one to two days/week made some sense at this point. Vet is investigating a job driving cars between dealerships." (R. 261) On June 3, 2002, Dr. Lehmann noted his "long history of bipolar disorder, " (R. 258), but that Watson had "[n]o angry outbursts, which patient sees as an improvement. He considers himself unemployable but is having financial problems. He has difficulty driving due to problems with other drivers, does not see himself as able to deal with other people, and has problems with his son currently as well." (R. 259) On June 5, 2002, Dr. Johnson noted:

> Vet reports improved mood – no depression or irritability. He reported on his handling of a frustrating and aggravating situation at a local store without blowing up. We discussed the possibility of his doing some limited volunteering at the VAMC to help him get out of the house a bit more and to provide more of a sense of purpose in his life.

(R. 257) Finally, on July 1, 2002, Roy A. Eck, Ph. D., Clinical Psychologist, reported that while Watson was content to stay at home, "he would like to be working if the right job came along. He said that he needed a job where he could work alone because of his easily aroused anger. He feels anxious whenever he is around others. He is least anxious when by himself. He did not report panic attacks or obsessive or ritualistic behavior which interfered with routine activities." (R. 253)

Considered in isolation, a credible argument can be made that Dr. Lehmann's June 13, 2002 Mental Limitations Assessment supports a finding of disability. But, when all of the record evidence is considered, especially the detailed Progress Notes from the VA psychiatrists and psychologists noted above, the record clearly contains substantial evidence to support the ALJ's decision that Watson is not disabled from all substantial gainful activity. A review of the record
11

and relevant case law indicates that the decision of the Commissioner is supported by substantial evidence and that correct legal principles were applied. For these reasons, it is recommended that the summary judgment be granted and the decision of the Commissioner be affirmed.

The Clerk is directed immediately to transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

Enter this _____ day of _____, 2005.

_____
Michael F. Urbanski
United States Magistrate Judge